That's correct, Your Honor. May it please the Court, Alexander B. Wathen for the petitioner, Saeed Sulaiman. I'd like to reserve at least three minutes for rebuttal as well. In this particular case, the record compels a different conclusion. There were two issues that the BIA had that I think a different conclusion has compelled. One is the credibility finding, and also whether the persecution was based on religion or protected ground. Also, a pre-real ID act, no corroboration is required. Mr. Sulaiman's testimony states that, of course, that the persecution was based on religion. It was because him and his family are Chaldean Christians, which is, I believe, about 3 percent of the population in Iraq. I'm not sure that's in the record. They were continuously persecuted by Muslims on account of religion. The immigration judge found that there were some, it looks like the substantial reasons was the immigration judge said that the statements were given in the application and to the asylum officers didn't contain a lot of the facts that were in evidence at the hearing. I don't recall, but did the asylum officer testify in this case? I don't recall if the asylum officer did, in fact, testify or not. I think what's really helpful, though, is that the asylum application, which is approximately pages 142 and 143 of the record and around there, a lot of those statements were computer-generated typewritten ones. And someone in detention couldn't possibly have written those. It was also done through a Chaldean interpreter as well. So also, Mr. Sulaiman testified that he was messed up or not feeling well when he was in custody as well. And that could certainly also help to explain the inconsistencies. In fact, he stated, I think it's on page 123 of the record, that, yes, I was in jail. I wasn't in control of my capacity of thinking. And then something indiscernible, I was confused. The heart of the case, of course, is that the persecution was on the basis of his religion. He was personally threatened. His family was threatened as well. Again, in this case, the immigration judge did not make an explicit finding as to the lack of credibility. He did, of course, say that the immigration judge did state that Mr. Sulaiman should have corrected the immigration, the asylum application during the several months after he was released from custody until before the hearing. Of course, he didn't even know the telephone number or the office location of his attorney. There's presumably also some linguistic issues involved. And those could easily explain why he didn't go over them. Perhaps, like many immigration lawyers are very busy and don't have the time to consistently go over details with their clients until shortly before the hearings. Those common-sense reasons like that could explain the lack of corrections between the different events. In this case, didn't the I.J. make an adverse credibility decision? I don't think the I.J. did. I mean, it's just at least I wouldn't interpret it that way. It's ‑‑ I thought it did. Well, at page 51, the I.J. did say that he's had each and every day to file a statement correcting this and the ‑‑ also that there were just ‑‑ He says on page 51 of the record, he says, on assessment of the record, the court concludes that the respondent is not a credible witness, for example. I think that that also has to go to the heart of the asylum claim. And I guess one could say that that's an adverse finding, but is it a proper adverse finding? Does it explain something that goes to the heart of the case and not just minor details? I think that may be more the issue. If the court interprets that to be a proper adverse credibility finding, it has to go to the heart of the record. And one of the issues was whether the restaurant ‑‑ that the restaurant was burned in May 2001 and then 45 days later, in April 2001, it opened. That's an example of the type of issues that this finding, if this should be called, was based on. Then on page 52 of the I.J.'s opinion that the petitioner was beaten up two times versus say that only his father was beaten up. Then whether he reported it to the police or not, that he was too afraid to report it. And I think the problem was, of course, there are a number of times, as I stated in the brief, that the record was inaudible, either translation error or the court reporter couldn't transcribe it. And that makes some of the stuff more difficult, too. Additionally, statements such as there's no government in Iraq. Of course, everyone knows there was at least officially a government, but what does that mean from the context? Maybe that there was no government that would protect Christians from a Muslim majority? And again, there's no other evidence of any other witnesses. And I think the immigration judge didn't look at this evidence as a whole, but simply tried to find little things that are not relevant to the persecution as a whole and determined based on that that the petitioner is not credible. The other issue, the protected ground, religion. The IJ also and the BIA stated that the petitioner didn't prove that it was a religion, that it was that they served alcohol. I would say that common sense says that anything that's indicative of religion, it's attitudes toward food and alcohol. And that clearly that the idea that that somehow is because the alcohol, not the religion, it just doesn't make sense. The if obviously if the restaurant was the restaurant was later leased to Christians who did not serve alcohol, of course, that that's sort of like telling a Muslim, telling a Christian, if you just stop serving alcohol and comply with our religious beliefs, we won't persecute you. And that that just doesn't make sense. So I think that that's a weak argument for that reason, too. Well, I think in a couple of points he actually stated it was because of being a Christian that he was beaten.  Judge Fletcher. In fact, he specifically did state that as well. I think it was the IJ and the attorney general that were sort of hung up on the theory that it was the alcohol, not the religion that was the basis. The record is full of circumstances when he did in fact state that it was because he was a Christian. I think page 114, that has to do with no government. I'd like to reserve the remainder of my time for rebuttal. That's fine. Thank you. Thanks. May it please the court. Bernard Joseph for the attorney general holder. Your Honor, the petitioner has not demonstrated that the record evidence compels a reversal of the agency's conclusion that the petitioner was not a credible witness. Furthermore, even assuming that the petitioner was a credible witness, which he's not, the petitioner has not demonstrated that the record evidence compels a reversal of the agency's conclusion that he didn't establish the nexus between his alleged mistreatment and Could you go over the bases upon which he found the individual to be incredible? Yes, Your Honor, I can. Let's look at each one of those. I would think that the bases are first there were inconsistencies about whether or not he or his family had reported any of these incidents to the police or the other authorities. At one point he testified he did. And this record in page 87. Or he did not. Then he testified that he did at 91. Then he testified again that he hadn't at 53 and 91. There was testimony concerning whether or not his cousin had been shot in his stead, and that wasn't supported by the application interview or the application itself. When did that happen? When was this? The alleged shooting would have occurred after he had left the country. There was also testimony about whether or not one of his brothers, there was an attempt at kidnapping against one of his brothers. And again, he testified to that, but that wasn't supported by either the interview or his asylum application. And when was that supposed to have taken place? He testified that either occurred, one attempt occurred six months prior to the hearing, which was the time of the interview. And the other had occurred nine months, which would have been before the interview. There was testimony that his father was not beaten, which was in direct contradiction to. Here, he's actually taking away from the validity of his asylum claim by saying, in fact, his father was not beaten. Yes. Usually they try to expand it. I think that may be true, Your Honor. But right now we're talking about, I thought we were talking about whether or not there's support for an adverse credibility finding. And I think certainly the significant omissions between both the application and the interview and the contradiction between the application. Did the IJ give him a chance to explain these discrepancies or call these discrepancies to his attention, and that he was going to rely on them in his making an adverse credibility determination and give him a chance to accomplish some explanation for these discrepancies? Certainly, I think the IJ at 81 of the record pointed out that certain details and dates may have been left out of the form I-589. And he asked counsel if there was anything they wanted to say about it. And counsel said that in the last three days they went over the declaration with the intent to add some things, respond and say you needed some time. But they didn't update it. So there was an opportunity in prior hearings and also at the merit hearing for the application to be amended or even corrected. Well, did he call to Mr. Solomon's attention that there were these discrepancies that caused him the IJ concern? And what is your explanation for these discrepancies? Your Honor, I believe they are, but I can't point to them in the record right now. I don't recall seeing that. That gave me some pause because under our case law, the alien has to have an opportunity to explain any discrepancies. The IJ is going to rely upon and make an adverse credibility decision. Right. And certainly I think that the IJ did give both counsel and the alien an opportunity to explain any omissions in the application or the interview or the contradictions in the application or the interview. There's discussion in the record about the length of time the alien had from post-detainment until the actual merits hearing that he could have looked at these things and made these changes, and he chose not to do so. When we look at this record, we know that the family was selling beer, that they were being harassed because of it. They knew that they were Christians. They burned the restaurant down. All of that is clear. Is that accurate? Well, Your Honor, there's testimony to that, but the judge made an explicit adverse credibility finding. You're suggesting that maybe there wasn't a fire? There's nothing to suggest that there wasn't a fire, and there's nothing to suggest that they weren't selling beer and that they were being harassed because of it. It would seem like those facts are ones that we would accept. Any reason that we shouldn't? Well, I think that the reason the judge, the immigration judge, didn't necessarily accept them because he found that the witness wasn't credible, but if we assume that certainly they were – for persecution based on religious beliefs, that's beyond the religious beliefs of the victim. I don't think Christianity's religious belief is you have a right to sell beer. The Muslims may have felt that it was against their religious beliefs not to sell beer or to consume alcohol. Both Muslims and Christians went to the restaurant, even while the restaurant was serving beer. And then after, it was still run by Christians, but the Christians that were running it and not selling beer weren't being persecuted, even though they were still Christians. And the record shows that they were having trouble, too. Isn't that correct? Well, I think Mr. Suleiman testifies to both. They weren't having problems and they were having problems in the record, which, again, is another inconsistency there. Furthermore, the inconsistencies that we were talking about did go to the heart of the petitioner's claim, including whether or not he was persecuted because he was a Christian versus that the restaurant sold beer. If the issue was the sale of beer, why didn't they target the petitioner's father as well? The father worked at the restaurant as well. Whether they reported the incident to the police or there were inconsistencies about that, it's also to the heart of the matter whether or not he has a well-founded fear of future persecution should he be returned to Iraq. Whether his cousin was shot in his stead goes right to the heart of his claim that he may have a well-founded fear of future persecution. Also, whether there were kidnapping attempts against his brother goes to whether or not there's a well-founded fear of persecution. In the record, there's evidence and testimony that the kidnapping attempts against his brother really were based more on the perception that his family had money rather than whether or not his brother was a Christian or wasn't a Christian. At that time, the allegations of whether or not the issue in this case was they were being persecuted because they were Christians who sold beer was really not an issue anymore. The family no longer ran the restaurant. They no longer sold beer. So certainly the kidnapping attempts can be looked at as a victim of a crime, which is not enough to support a well-founded fear of persecution in this case. The immigration judge offered specific and cogent reasons for his adverse credibility finding, but even if we accept the petitioner's testimony as credible, the claims that he was persecuted because he sold beer, which was against Muslim faith, not on any of his religious beliefs, and the alleged persecution does have to be on account of the victim's belief and not on account of the alleged persecutor's belief. Also, the statement that the government of Iraq doesn't have a... or that there is no government in Iraq... If a Christian is selling beer, it's his belief that that's okay, and the Muslim could be faulting him because of his Christian beliefs that it's okay to sell beer, and also his other fact he's a Christian. So it seems to me that the argument that they're not showing that the victim is being persecuted on account of his beliefs is rather weak. I couldn't quite follow that argument. Both Muslims and Christians went to the restaurant even while it was selling beer. Well, they maybe had good food. Perhaps it did, Your Honor. I'm not sure. And also, the issue of whether or not his father sold beer at the restaurant, he wasn't persecuted. Also, there's evidence in the record that shows that both the Sunni Muslims and even the very militant Shiite Muslims have condemned attacks on Christians in Iraq. The fact they burned down the restaurant would affect both the father and the son, would it not? Correct. It would affect both the father and the son in Iraq. Okay. Over my time. Yes, thank you. Your Honors, going through the immigration judge's decision, it does not appear from the decision itself that there ever was any attempt to allow Mr. Suleiman the petition to explain the inconsistencies. That he relied on. That the immigration judge relied on. It does not appear, and I certainly in my brief wrote that. I was going over the citations trying to find something. I certainly do not believe there were any opportunities to explain them at the hearing. So I understand clearly. Assuming that, taking your argument that he should be found credible, that there is insubstantial evidence or there is not substantial evidence to support the adverse credibility finding and that compels a different decision with respect to credibility or that you have to remand it back to the agency to allow him to explain. What's your argument with respect to the nexus again? The attitudes toward alcohol is a surrogate for religion just like language may be a surrogate for ethnicity. They're so closely tied that it's really almost intellectually dishonest to say that it's a different thing. The testimony of the record also supports that it was because they were Christian. And obviously the Christians who conform to Muslim beliefs would not be persecuted and the Christians who do not get persecuted is perfectly consistent with a religious-based persecution. Hopefully that answers that question. With respect to the other inconsistencies, it is interesting to say that on page 53 of the record in the IJ's decision, it states that the respondent is not clear or consistent. His word is his only evidence. His word is insufficient to meet the burden for asylum withholding. That might also be an error because this is pre-real ID. You're over your time. Thank you so much. Thank you. Thanks. Thank you. Our next case for argument, I believe, is...
judges: Korman, Fletcher B. , Paez